# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOANNE STRUGALSKI,

  Plaintiff,

v.

NORFOLK SOUTHERN CORPORATION
T/D/B/A NORFOLK SOUTHERN
RAILWAY COMPANY,

  Defendants.

Case No.

**COMPLAINT IN CIVIL ACTION**

**JURY TRIAL DEMANDED**

## COMPLAINT

AND NOW, Plaintiff Joanne Strugalski by and through her attorneys Kraemer, Manes & Associates, LLC and Nelson D. Berardinelli, Esquire files this complaint against Defendant Norfolk Southern Corporation t/d/b/a Norfolk Southern Railway Company alleging the following:

### I.      Nature of the Action

1. This is an action for equitable relief, monetary (including but not limited to economic, compensatory, liquidated, and punitive damages, as allowed by applicable law), and all other remedies available under the following statutes, to redress Defendant's below-described unlawful acts and omissions. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII"), and the Federal Rail Safety Act (see 49 U.S.C. § 20109) This action does <u>not</u> include any claims under the Pennsylvania Human Relations Act (PHRA);

however, Plaintiff reserves the right to seek amendment of this complaint to add PHRA claims if said claims are not resolved during the administrative process.

## II.   Jurisdiction and Venue

2.      This action arises under 42 U.S.C. §2000e *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Federal Rail Safety Act (see 49 U.S.C. § 20109) ("FRSA"). This Court has jurisdiction over Plaintiff's claims, pursuant to 28 U.S.C. § 1331. A substantial portion of the events or omissions giving rise to the claims, occurred in Beaver County Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania, and, pursuant to 28 U.S.C. § 1391(b), venue is proper in Pittsburgh.

3.      This Court also has jurisdiction over Plaintiff's FRSA claims (de novo review) pursuant to 49 U.S.C. § 20109(d)(3) and 29 C.F.R. § 1982.114(a)-(c) because:

   a. More than 210 days have passed since Plaintiff filed its FRSA Complaint with the U.S. Department of Labor/OSHA (which complaint alleging FRSA violations was filed on or about June 21, 2016);

   b. No final order of the Secretary of Labor has been issued; and

   c. There has been no delay due to the bad faith of Plaintiff.

## III.   PARTIES

4.      Plaintiff, Joanne Strugalski ("Plaintiff") is an adult female individual who resides at 511 Sproat Ave., Freedom, Pennsylvania 15024, who was employed by Defendant Norfolk Southern Corporation t/d/b/a Norfolk Southern Railway Company.

5.      Defendant, Norfolk Southern Corporation t/d/b/a Norfolk Southern Railway Company (hereafter "Defendant") is a business corporation which conducts business at 1101 First Avenue & Route #65, Conway, Pennsylvania 15027.

## IV.    Facts

6.      All other paragraphs of this complaint are incorporated herein as if fully set forth at length.

7.      Plaintiff is a female, and therefore protected by the provisions of Title VII of the 1964 Civil Rights Act against discrimination based on her sex and/or gender.  .

8.      Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") at Charge No. 533-2016-01134 (dual-filed with the PHRC) on or about June 21, 2016, alleging, *inter alia*, violations of Title VII.  See Exhibit A.

9.      A Notice of Right to Sue was mailed from the EEOC to Plaintiff on or about January 11, 2017.  See Exhibit B.

10.      Plaintiff also filed a complaint with the United States Department of Labor/OSHA on or about June 21, 2016. See Exhibit C.

11.      Plaintiff began working for Defendant on or about March 14, 2005, as a conductor and previously had spent approximately 10-11 years working in the rail yard.

12.      On or about January 4, 2015, based upon Plaintiff's seniority, Plaintiff attended Engineer School.

13.      On or about January 27, 2015, Plaintiff returned from Engineer School after graduating.

14.      Plaintiff attended engineer training at work from approximately April 16, 2015 to September 28, 2015.

15.     Plaintiff repeatedly voiced concerns to Defendant that she did not have the training and experience necessary to safely and properly perform the duties of an engineer on the road.   She did so repeatedly prior to December 28, 2015.

16.     Plaintiff also reported many other safety concerns/violations to Defendant prior to her suspension and termination, including but not limited to:

a.     Unsafe walking conditions;

b.     Hard to throw switches; and

c.     Close and dangerous clearance conditions.

17.     Plaintiff also testified several years ago in Harrisburg, as a union official, regarding the elimination of the skate jobs in Conway yard (she gave a statement on how the new automatic skates were not as efficient and were a danger to the employees that worked in the area).

18.     On or about December 28, 2015, Plaintiff was on the 10NC228 train with Conductor C.J. Buta (who is a male), traveling from Conway to Altoona.

19.     To begin the trip, Plaintiff did a safety briefing and asked Mr. Buta if there was anything that she needed to know and asked "what speed they were good for," meaning if there were any restrictions. Mr. Buta replied 45 mph, neglecting to mention that they were in a key train (train with restrictions).

20.     Around 1:00 p.m., the train dispatcher told Mr. Buta and Plaintiff that they would be making a pause at CP Salts. At this time, the train was traveling uphill. The conductor saw the signal ahead first, noticing that it was an all red stop signal.

21. Plaintiff quickly throttled off and put full service on. However, worried that the train would not stop, Plaintiff went to second service, providing more air pressure in order to stop. As a result, the train automatically went into emergency.

22. At this time, Mr. Buta said that he did not have to walk the train.

23. Upon arriving in Altoona, the trainmaster, G.F. Boutrof, was waiting at the re-crew point to do a random tape pull. When Mr. Buta got off of the train the trainmaster asked him if we were a key train, and the conductor replied "I don't know."

24. After the incident which occurred on or about December 28, 2015, Plaintiff was placed on unpaid leave pending a hearing (also known as being "taken out of service").

25. Defendant pulled the tapes from the December 28, 2015 incident.

26. On or about January 21, 2016, Plaintiff had a hearing before Defendant. The hearing officer that day (as assigned by Defendant) was Travis Bailey, Division Road Foreman.

27. After Plaintiff's hearing, she was found "guilty" (i.e., Defendant purportedly determined that Plaintiff had violated company rules).

28. A few hours after Plaintiff's hearing, she spoke with O.J. Bozza, Yard Master. He told Plaintiff that on January 20, 2016, the day before Plaintiff's hearing, that the Superintendent, Joe Bolick, told him that Plaintiff was fired.

29. The Conductor, Mr. Buta, was permitted to go back to work with time served. However, Plaintiff was terminated, purportedly as a result of her actions on or about December 28, 2015.

30. The last day the Plaintiff worked for Defendant was December 28, 2015. Plaintiff's dismissal date was February 3, 2016.

31.    Other similarly situated employees of Defendant who did not engage in protected activity under the FRSA (e.g., reporting safety violations/concerns) and who engaged in similar conduct to the conduct Plaintiff was alleged to have engaged in were not terminated.

32.    In addition, other similarly situated male employees of Defendant (including but not limited to Mr. Buta) have been involved in incidents similar to the incident Plaintiff was involved in, and they were not fired. For example (by way of illustration only – this is not an exhaustive list):

    a.    Chris Kierski (an Engineer) on or about July 3, 2015, put his train in emergency when approaching a banner in Altoona (he did this on purpose, i.e., he "dumped his train"). The tapes on his train were never pulled. Neither Mr. Kierski nor his Conductor ever walked his train. Further, Mr. Kierski did not announce emergency on the radio. In addition, he was on restricted speed/signal. He was not terminated, and it is believed and therefore averred that he was never reprimanded.

    b.    Bruce Kalinoski (an Engineer), on or around May 16, 2015, had a similar incident as Plaintiff had.  He dumped his train, and he was on restricted speed/signal. He was not fired; instead, he was merely suspended for ten days.

    c.    It is believed and therefore averred that Mark Shaw and Mark Thompson dumped train in Mingo Junction when approaching a banner, while on restricted speed/signal. It is believed and therefore averred that they were not fired; instead they were each suspended for approximately 30 days each.

33.    Defendant acted took unlawful adverse employment actions against Plaintiff, including but not limited to by (1) placing her on unpaid leave beginning on or about December 29, 2015; and (2) firing her on or about February 3, 2016.

34.    Defendant took these unlawful adverse employment actions against Plaintiff, in whole or in part:

      a.    In retaliation against Plaintiff for reporting safety concerns (as described elsewhere in this complaint), in violation of the FRSA; and

      b.    Because she is a female, in violation of Title VII.

35.    The approximate number of employees who are employed by Defendant in the divisions where Plaintiff worked is over 100.

36.    Defendant's unlawful acts and omissions were intentional, willful, and purposeful.

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964**
**Sex Discrimination against Defendant – Unlawful Termination and Suspension**

37.    All other paragraphs of this pleading are incorporated herein as if set forth at length.

38.    Plaintiff is a female employee, and therefore protected against sex discrimination pursuant to the provisions of Title VII.

39.    Defendant employs more than 15 people, and is therefore a statutory employer pursuant to the provisions of Title VII.

40.    Defendant unlawfully suspended, and then unlawfully terminated, Plaintiff, including but not limited to because she is a female.

41.    Defendant's unlawful acts and omissions are in violation of Title VII of the 1964 Civil Rights Act.

42.    As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

**COUNT II**
**Violation of the FRSA (Federal Rail Safety Act)**
**<u>Retaliation against Defendant – Unlawful Termination and Suspension</u>**

43.    All other paragraphs of this pleading are incorporated herein as if set forth at length.

44.    Defendant is a railroad carrier engaged in interstate commerce.

45.    As amended by the Implementing the Recommendations of the 9/11 Commission Act, effective August 3, 2007, Section 20109 of the Federal Rail Safety Act, 49 U.S.C. § 20109, was amended to provide that a railroad engaged in interstate commerce (such as Defendant) shall not, among other things, fire or terminate an employee for reporting to a supervisor her good faith that she reasonably believes constitute violations of any federal law, rule, or regulation relating to railroad safety.  See, e.g., 49 U.S.C. § 20109(a)(1)(C) and 49 U.S.C. § 20109(b).

46.    Plaintiff engaged in protected conduct when she reported in good faith, numerous hazardous safety and security conditions, including but not limited to her concerns that she lacked sufficient training and experience necessary to safely and properly perform the duties of an Engineer on the road (which certainly qualifies as a hazardous safety or security condition under 49 U.S.C. § 20109(b)(1)(A)), in violation of the FRSA's antiretaliation  provision  (see., e.g.,  49  U.S.C.  §  20109(b)(1)(A);  49  U.S.C.  § 20109(a)(1)).

47.    The Plaintiff engaged in a "protected activity."  See, e.g., 49 U.S.C. § 20109(a)(1) and 49 U.S.C. § 20109(b)(1)(A).

48.     Plaintiff reported to Defendant in good faith numerous hazardous safety conditions and violations of railroad safety or security regulations, rules and/or federal laws and safety concerns, including but not limited to that she had insufficient training and experience to be an engineer on the road; therefore, Defendant knew that Plaintiff engaged in activity that was protected under the FRSA.

49.     Defendant's decision to unlawfully terminate Plaintiff  was made, in whole or in part,  in retaliation for Plaintiff's reports of hazardous safety conditions and violations of railroad safety and/or security regulations, rules and/or federal laws. See 49 U.S.C. § 20109(b)(1)(A); 49 U.S.C. § 20109(a)(1)(C).

50.     Defendant has an informal policy of retaliating against employees who report hazardous safety conditions and violations of railroad safety and/or security regulations, rules and/or federal laws.

51.     Plaintiff's engagement in protected activity under the FRSA was a contributing factor in Defendant's decision to terminate Plaintiff.

52.     Plaintiff was treated much more harshly than similarly situated individuals, including but not limited to Mr. Buta, the Conductor on the train in question, whose alleged rules violations were much more serious than Ms. Strugalski's alleged rule violations. See, e.g., Araujo v. N.J. Transit Rail Operations, Inc., 708 F.3d 152 (3rd Cir. 2013) (holding that although an employee may have violated certain written company rules, if those rules were enforced in a discriminatory manner, then the employee's rules violations do not shield the company from liability under the FRSA).

53.     The investigation/hearing of Ms. Strugalski regarding this incident was a complete sham, in that a co-worker of Ms. Strugalski was told by someone in the Company's management prior to her hearing that she would be terminated.

54.     Here, the rules were applied in a patently discriminatory manner, as illustrated by, *inter alia,* the fact that the Conductor on the train on the day in question was not only not terminated for his alleged misconduct, but, by the Company's own admission, he was not even investigated.

55.     Defendant unlawfully suspended, and then unlawfully terminated, Plaintiff, including but not limited to in retaliation against Plaintiff for reporting hazardous safety conditions and violations of railroad safety and/or security regulations, rules and/or federal laws (as described elsewhere in this complaint), in violation of the FRSA.

56.     If Defendant is allowed to continue to engage in improper and outrageous conduct in firing employees, like Plaintiff, who engage in the protected activity of reporting hazardous safety conditions and violations of railroad safety and/or security regulations, rules and/or federal laws, Defendant will have succeeded in deterring employees from reporting said concerns, which is exactly what the FRSA aims to prevent.

57.     Defendant should be subjected to punitive damages under the FRSA to deter it from continuing to engage in the outrageous practice of firing employees who in good faith report reporting hazardous safety conditions and violations of railroad safety and/or security regulations, rules and/or federal laws, including but not limited to concerns regarding insufficient and negligent training.

58.     As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

**Request for Relief**

WHEREFORE, Plaintiff Joanne Strugalski respectfully requests for this Court to enter judgment in her favor and against Defendant, and award to Plaintiff, all damages and remedies available under the above-cited statutes, including but not limited to the following:

a. Economic, liquidated, punitive, and compensatory damages, as allowed by applicable law;

b. Pre and post judgment interest, costs of suit and attorney and expert witness fees and costs as allowed by applicable law;

c. Reinstatement of Plaintiff with the same seniority status that she would have had if not for Defendant's unlawful conduct;

d. Such equitable relief as may be appropriate under the circumstances; and

e. Any other relief this Court deems appropriate.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

*/s/*Nelson D. Berardinelli
Nelson D. Berardinelli, Esquire
Pa. Id. No. 310581
**KRAEMER, MANES & ASSOCIATES, LLC**
U.S. Steel Tower
600 Grant Street, Suite 660
Pittsburgh, PA 15219
411.626.5565 (p)
412.637.0240 (f)
nb@lawkm.com
*Attorney for Plaintiff*